UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION


KRISTIANA L. MEROLLA

v.                                                    No. 5:22-cv-81-BJB-LLK

MONEYGRAM INTERNATIONAL, INC.,
ET AL.

MEMORANDUM OPINION & ORDER

This lawsuit arises from a multi-state relationship gone wrong. Kristiana Merolla, seeking assistance in her custody battle with (presumably Kentucky) Child Protective Services, contracted with Jon Scot (a/k/a Jon Kahlkopf) for "investigative services." They had a falling out, however, and now find themselves in federal court. Complaint, Exhibit 1 (DN 1-1) at 20. Merolla is representing herself in this lawsuit against Kahlkopf (who is also proceeding *pro se*) for breach of contract, negligent misrepresentation, and fraud (though she doesn't always phrase her claims in these terms). Amended Complaint (DN 6) at 5. She has also sued MoneyGram Payment Systems, Inc.[1] for "supporting a fraudulent business," refusing a refund, and failing to comply with a records request. *Id.*

Merolla has moved for leave to file a Second Amended Complaint (DN 26) and a sur-reply (DN 33). Kahlkopf and MoneyGram, meanwhile, have moved to dismiss for lack of subject-matter jurisdiction (DN 11). MoneyGram has also moved to dismiss for failure to state a claim (DN 17). Because Merolla's compensatory- and punitive-damage allegations appear not to reach the amount-in-controversy requirement for federal court, the Court grants the motions to dismiss but will allow Merolla 30 days to ask the Court to consider an amended complaint further supporting her allegations for damages against Kahlkopf. And because the factual allegations do not support any claims against MoneyGram under Kentucky law—regardless of the Court's subject-matter jurisdiction—the Court further grants MoneyGram's motion to dismiss for failure to state a claim and dismisses Merolla's claims against it.

I.   ALLEGATIONS

The summer of 2021 dealt Kristiana Morello twin blows: the death of her child's father and her child's removal by Child Protective Services. Complaint,

---

[1] MoneyGram Payment Systems, Inc. states that Merolla erroneously identified it as MoneyGram International Inc. in her Complaint. MoneyGram's Motion to Dismiss (DN 17) at 1. Nothing turns on this distinction given the Court's disposition.

Exhibit 1 (DN 1-1) at 20.  Desperate to recover her child, she reached out to Jon Kahlkopf of Returnmychild.com, who purports to provide investigative services to parents who have lost custody of their children.  *Id.*  According to the Amended Complaint, which the Court must accept as true at this stage, Merolla paid Kahlkopf $75 in August 2021 for an initial consultation through Amazon Pay.  Complaint, Exhibit 1 (DN 1-1) at 22; Amended Complaint (DN 6) at 6.  During that meeting, she explained the services she needed and emailed him some relevant documents.  Amended Complaint at 6.  A few days later, Kahlkopf gave Merolla a quote for his services and told her she "needed to pay within 10 days or his services would not be available otherwise."  *Id.*  Merolla used MoneyGram, a payment-transfer company, to submit 3 payments to Kahlkopf totaling $6,200 on August 26 and 27.  *Id.*

 After paying Kahlkopf's fee, Merolla sent Kahlkopf paperwork that apparently needed his signature.  Amended Complaint at 6.  Kahlkopf, however, "refused to sign any third party legal rep signature to the [d]ocuments [Merolla] sent him."  *Id.*  She asked for a refund, which Kahlkopf refused.  *Id.*

Despite Kahlkopf's refusal to sign these documents, Merolla "sent [Kahlkopf] all pertinent information that he requested for investigation purposes" between August 27 and September 20.  In November, Merolla again asked for a refund as she "was not confid[e]nt that he was going to help [her] build a case."  *Id.*  Kahlkopf offered to close her case file but again denied Merolla's refund request, allegedly threatening to send a cease-and-desist notice if Merolla continued to ask for the money.  *Id.*

Merolla voiced her concerns yet again in January of 2022.  She emailed Kahlkopf and scheduled a phone call on January 17.  *Id.*  During that call, Kahlkopf "asked [Merolla] what state [she] resided in" and appeared to have "zero information or proof of any investigative reports in regards to building [her] civil case."  *Id.*  After the call, Merolla informed Kahlkopf by text that "he was wasting [her] time and that she would be contacting the Federal Trade Commission, MoneyGram, and the authorities" if Kahlkopf did not pay the refund.  *Id.*  Merolla filed a police report against Kahlkopf, who replied to the report in ways Merolla described as "slander[ous]," "attack[ing] [her] character," and "threaten[ing]."  *Id.* at 6.

MoneyGram received its own refund request from Merolla on January 18—a demand that it refund the money Merolla paid to Kahlkopf through the platform; she also reported Kahlkopf's fraud.  Amended Complaint at 6.  MoneyGram told Merolla "to take legal action."  *Id.*  In March 2022, Merolla tried to do so; she sent a "Summons for an Open Records request for certified information" to MoneyGram.  *Id.*  MoneyGram "ignored [her] request and refused [her] any refund."  *Id.*

## II.   THIS LITIGATION

Merolla filed her first complaint against Kahlkopf, his affiliated businesses, and MoneyGram in June 2022.  The Court granted leave that December for Merolla to amend her complaint and clarify her claims.  DN 5.  Merolla then submitted an

amended complaint (DN 6), which the Court accepted.  Memorandum and Order (DN 7).

That complaint (at 4) invoked the Court's diversity jurisdiction.  She claims that she is a resident of Kentucky, that MoneyGram is a Texas corporation, and that Returnmychild.com, AlphaGroup, and Jon Scot (Kahlkopf) are based in Florida.  *Id.* at 2, 4–5.[2]  She seeks compensatory damages of $6,200 from MoneyGram, compensatory damages of $6,200 from Kahlkopf and his businesses (presumably the same $6,200 she claims from MoneyGram), and $250,000 in punitive damages from each Defendant.  *Id.* at 5.  Merolla alleges that MoneyGram "supported a fraudulent business," refused to give her a refund, and did not comply with her "records request." *Id.*  As to Kahlkopf, she asserts claims for breach of contract and negligent misrepresentation against "J.Scot (Aka J. Kahlkopf) of Returnmychild.com/Alpha group LLC."  *Id.*

Both Defendants have since filed motions to dismiss due to lack of subject-matter jurisdiction.  Kahlkopf also moves to dismiss for insufficient service of process, *see* FED. R. CIV. P. 4 (an argument the Court doesn't reach given the discussion below), while MoneyGram additionally moves for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

In response, Merolla has filed a motion for leave to file a second amended Complaint.  DN 26.  This amended complaint adds MoneyGram Payment Systems Inc., a Minnesota company, as a defendant.  Second Amended Complaint (DN 26-1) at 3, 5–6.  She also filed a motion for leave to file a sur-reply to "seek a fair opportunity to respond to the new issues cited by Kahlkopf in his Reply."  DN 33 at 1–2 (cleaned up).

### III.  MEROLLA'S MOTIONS FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT AND SUR-REPLY

The Federal Rules of Civil Procedure instruct judges to "freely give leave" to amend pleadings "when justice so requires."  FED. R. CIV. P. 15(a)(2).  "The thrust of Rule 15 is … that cases should be tried on their merits rather than the technicalities of pleadings."  *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).  Merolla's proposed amended complaint pleads no new facts or claims and was filed early in litigation.  She contends she did not initially realize that MoneyGram Payment Systems and MoneyGram International were separate entities, or that MoneyGram Payment Systems handled her complaint reports.  Motion for Leave to Amend at 1.  No prejudice is evident and allowing the amendment is well within the Court's discretion.  *See, e.g., Corley v. Dental Bliss*, No. 3:17-cv-1211, 2018 WL 11476225, at

---

[2] Kahlkopf claims that J & J Investigations, LLC, not Alpha Group, LLC, is the name of his private investigative business.  Alpha Group, according to Kahlkopf, was used only for payment processing.  *See* Kahlkopf Motion to Dismiss at 3.  Kahlkopf claims J & J Investigations is also a Florida company.  *Id.*

3

*2 (M.D. Tenn. June 18, 2018) (*pro se* litigant may amend a complaint under Rule 15(a)(2) to add new parties). The Court therefore grants Merolla's motion for leave to file a second amended complaint.

Whether to permit a sur-reply is likewise a matter that lies well within a trial court's discretion. *See Mirando v. U.S. Dept. of Treasury*, 766 F.3d 540, 549 (6th Cir. 2014). Although judges are wary of attempts to use sur-replies to gain a strategic advantage by securing the "last word on a matter," *Crenshaw v. Portfolio Recovery Associates, LLC*, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020), leave is routinely granted when an opposing party raises new arguments in a reply brief. *See, e.g., Long v. Nationwide Recovery Service, Inc.*, No. 3:22-cv-122, 2023 WL 6810093, at *1 (W.D. Ky. Oct. 16, 2023). Kahlkopf raised multiple new points in his reply brief—for example, citing a police report that he says undermines Merolla's claim and credibility. *See* DN 15 at 2–3, 5; *Eng'g and Mgf. Servs., LLC v. Ashton*, 387 Fed. App'x 575, 583 (6th Circ. 2010) (district court abused its discretion in failing to allow a sur-reply when a defendant brought new arguments in the reply brief). So the Court grants Merolla's motion to file a sur-reply.

## IV. MOTIONS TO DISMISS

MoneyGram has moved to dismiss the amended complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and, in the alternative, for failure to state a claim under 12(b)(6).

Because Merolla has "invoke[ed] federal jurisdiction"—specifically, diversity jurisdiction, *see* 28 U.S.C. § 1332—she bears the burden of establishing that subject-matter jurisdiction exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); Second Amended Complaint at 4. So she must show complete diversity of citizenship—which she does by asserting that she is a citizen of Kentucky and all the Defendants are not. No one disputes that. But she must also show that the amount in controversy is greater than $75,000. 28 U.S.C. § 1332(a). MoneyGram is correct that the amount in controversy, based on the allegations currently before the Court, is insufficient to invoke the Court's jurisdiction.

**A.** Start with Merolla's claims against MoneyGram. She alleges that she is entitled to recover $6,200 in compensatory damages against MoneyGram "for services that were not provided from [the] firm they represent." Second Amended Complaint at 7. In other words, she seeks a refund—regardless of whether MoneyGram or Kahlkopf pays the $6,200 she says lost. She never contends (and nothing suggests) she can or even seeks to recover the same money twice.

Nor has Merolla plausibly alleged that she could recover punitive damages against MoneyGram. When a plaintiff seeks punitive damages, that amount counts toward the amount in controversy unless it is "apparent to a legal certainty" that the plaintiff cannot recover them. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001); *see also Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 473 (6th Cir. 2019) (amount-in-controversy requirement satisfied based on a 2:1 ratio of

punitive to compensatory damages); *T & W Forge, Inc. v. V & L Tool, Inc.*, No. 05-cv-1637, 2005 WL 2739321, at *4 (N.D. Ohio Oct. 24, 2005) (similar finding using a ratio of 1.3-to-1).

Under Kentucky law,[3] punitive damages are not available in contract disputes, KRS § 411.184(4), but are available in non-contractual disputes if the defendant acted with "oppression, fraud, or malice," KRS § 411.184(2).[4]  Oppression means "conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship."   KRS  §  411.184(1)(a).   Fraud  means  "an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." KRS § 411.184(1)(b).

Merolla has not alleged that MoneyGram acted with oppression, fraud, or malice.  She says only that MoneyGram supported a fraudulent business.  Even if that amounts to a tort (which it doesn't appear to), it differs from a claim that MoneyGram itself defrauded her, thereby subjecting itself to punitive damages.  Rather, she alleges that she (1) paid Kahlkopf through MoneyGram; (2) demanded a refund from MoneyGram; (3) reported Kahlkopf's fraud to MoneyGram; and (4) sent MoneyGram an "Open Records request."  Second Amended Complaint at 10.  Then MoneyGram "ignored" her request for records and "refused" her request for a refund. *Id*.  Nothing about these allegations suggest that MoneyGram acted with malice, "specifically intended" to subject Merolla "to cruel and unjust hardship" (oppression), or intended to "misrepresent, deceive, or conceal a material fact known" by MoneyGram "with the intention of causing injury to" her (fraud).  KRS § 411.184(1).

In any event, even if Merolla could make it past Rule 12(b)(1), her claims against MoneyGram would fail under 12(b)(6).  *See* MoneyGram's Motion to Dismiss (DN 17) at 1.  "[T]o survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,'

---

[3] To determine whether Merolla's damages claims exceed the amount-in-controversy requirement, the Court must look to the choice-of-law rules of the state in which it sits—here, Kentucky.  *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013).  MoneyGram applies Kentucky substantive law.  *See* MoneyGram's Motion to Dismiss at 7 (applying Kentucky law to argue Merolla's punitive-damages claims cannot support the jurisdictional amount in controversy).   Merolla and Kahlkopf don't disagree or argue otherwise—Kahlkopf's motion to dismiss mentions a "Choice of Law and Forum" provision from one of "Defendant's websit[es]," but it does not state whether Merolla is bound by this language or even which state law would apply.  *See* Kahlkopf Motion to Dismiss at 5.  Further, "Kentucky courts … appl[y] Kentucky substantive law *whenever possible* .... Kentucky applies its own law unless there are overwhelming interests to the contrary." *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) (emphasis in original).  Absent argument to the contrary, the Court will apply Kentucky substantive law in this case.

[4] The Kentucky Supreme Court held the statutory definition of "malice" unconstitutional. *Williams v. Wilson*, 972 S.W.2d 260, 269 (Ky. 1998) (finding KRS § 411.184(1)(c) "to be in violation of the jural rights doctrine and unconstitutional").

and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citation omitted).

Even considering those less stringent standards, Merolla's claims against MoneyGram can't survive a motion to dismiss. Merolla's first claim—that MoneyGram "supported a fraudulent business"—does not appear to state a claim recognized by Kentucky law. Instead it seems to rest on MoneyGram's facilitation of her payment to Kahlkopf. *See* Second Amended Complaint at 5, 10. This occurred at the direct request of Merolla. *Id.* Nothing in the pleadings suggests MoneyGram misrepresented anything to Merolla, induced her to use their services, or did anything other than facilitate a payment requested by her. Merolla has failed to plead any circumstances under which her claim for "supporting a fraudulent business" could impose liability on MoneyGram, and therefore the claim must be dismissed.

Merolla's second claim—that MoneyGram failed to provide a refund—similarly lacks supporting facts establishing an entitlement to damages. While Merolla alleges she asked MoneyGram for a refund, she does not allege that she was owed a refund, that MoneyGram misrepresented to her that it would provide a refund, or that MoneyGram otherwise breached any contract. Second Amended Complaint at 10. And as to her third claim, Merolla does not allege any facts to suggest MoneyGram was obligated to answer an open records request. Merolla points to Kentucky Revised Statutes §§ 61.870–.884 in support of this claim, DN 1-1 at 6, but this law refers only to "public records" that are "owned or maintained by or for a public agency." KRS § 61.870(1)–(2). Nothing suggests MoneyGram had any obligation to share records with Merolla in response to a records request. Indeed, Merolla even admits that MoneyGram "was not contractually obligated to send Merolla the requested Data[.]" Defendant's Response to MoneyGram's Motion (DN 23) at 11.

Because Merolla fails to plead facts supporting her claims, the Court would grant MoneyGram's motion to dismiss even if Merolla had satisfied the amount-in-controversy requirement.

**B.** That just leaves Merolla's claims against Kahlkopf. She alleges that she is entitled to (presumably the same) $6,200 in compensatory damages from Kahlkopf "for services denied and refusal of multiple requests for a refund." Second Amended Complaint at 7. She also asserts a claim for $250,000 in punitive damages for "failure

and denial to provide services," "mental anguish," and "financial hardship of losses incurred due to failure of services." *Id.*[5]

Merolla has plausibly alleged common-law fraud against Kahlkopf (though she doesn't explicitly assert a fraud claim in those terms). Kentucky law requires that a plaintiff establish six elements of fraud:" (1) a material misrepresentation, (2) which is false, (3) known to be false or made recklessly, (4) made with inducement to be acted upon, (5) acted in reliance thereon, and (6) causing injury. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999) (citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)). Merolla has alleged that Kahlkopf represented that he could help her recover her child if she paid him; she paid; he "never did anything he promised to do" and never had any intention of doing so; and he refused to return her money. *See* Second Amended Complaint at 10. Given the forgiving review due a *pro se* complaint, at this stage these factual allegations suffice to state a plausible claim for fraud.

Because Merolla has plausibly alleged fraud, she has also plausibly alleged that she can recover some amount of punitive damages. As discussed above, punitive damages are available under Kentucky law in non-contractual claims if a defendant acted fraudulently. And Kentucky courts have held that a plaintiff who establishes the common-law elements of fraud can recover punitive damages. *Rickert*, 996 S.W.2d at 470 ("Rickert was entitled to have the jury consider punitive damages because he had demonstrated fraud by clear and convincing evidence."); *see also Pezzarossi v. Nutt*, 392 S.W.3d 417, 420 (Ky. Ct. App. 2012) (similar).

But how much? Perhaps not enough to exceed the $75,000 amount-in-controversy threshold. That would require approximately $68,800 in punitive damages beyond her actual loss. That amount is more than 10 times the compensatory damages she has demanded from Kahlkopf and MoneyGram. And the Supreme Court has said that "a punitive damages award of more than 4 times the amount of compensatory damages," while not reversible in that case, was "close to the line" of what is constitutionally permissible. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581 (1996) (citation omitted); *see also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). To meet the jurisdictional amount, Merolla would need more than double that ratio. Similarly, Kentucky Courts have blessed punitive damages that are five times the amount of compensatory damages, *Louisville SW Hotel v. Lindsey*, 636 S.W.3d 508, 520 (Ky. 2021), and four times the amount of compensatory damages, *Yung v. Grant Thornton, LLP*, 563 S.W.3d 22, 73 (Ky. 2018). But it has also said that "punitive/compensatory damage ratios of 10:1 and greater are burdened with at least the appearance of unconstitutionality." *Saint Joseph Healthcare, Inc. v. Thomas*, 487 S.W.3d 864, 880 (Ky. 2016). Generally

---

[5] While Merolla demands only $6,200 in what she labels compensatory damages and $250,000 in punitives, her reference to mental anguish and financial hardship suggest this "punitive" amount may include some amount of compensatory damages. That could of course affect the relationship between actual and punitive damages for Due Process purposes.

speaking, larger ratios are permissible only when there is a "small amount of economic damages" and a "particularly egregious act." *Id.*

At this stage, nothing about Merolla's claims suggests a basis to take it outside the range the Kentucky and U.S. Supreme Courts have contemplated. But neither is the Court convinced with "legal certainty" that Merolla could not recover that amount in punitive damages. *Hayes*, 266 F.3d at 572. Merolla's allegations—at least as presented here—suggest Kahlkopf defrauded her during a vulnerable period. And the ratio is only one relevant consideration. Rather than rely on a "simple mathematical formula," courts should also consider the egregiousness of the alleged act and the amount of economic harm. *Gore*, 517 U.S. at 582. The Court therefore grants Kahlkopf's motion to dismiss for lack of subject-matter jurisdiction. But the Court will allow Merolla 30 days to file an amended pleading further identifying the bases for her punitive damages claims, including the nature of her "mental anguish" and "financial hardship" damages, against Kahlkopf and his related businesses.

## V.    CONCLUSION

The Court grants Merolla's requests to file a second amended complaint and a sur-reply and grants MoneyGram's motion to dismiss. The Court further grants Kahlkopf's motion to dismiss. Out of an abundance of caution, however, the Court will allow Merolla 30 days within which to file a request to further clarify her allegations along with a proposed third amended complaint—assuming she can allege, in good faith, facts supporting an amount in controversy that exceeds $75,000.

Benjamin Beaton, District Judge
United States District Court

March 29, 2024

8